CITED *in Woodruff* v. *Chapin,* 3 *Zab..* 555 : *State* v. *French,* 4 *Zab.* 739; *Allen* v. *Tyler,* 3 *Vr.* 501.

---

EBENEZER B. WOODRUFF v. LOTHROP W. CHAPIN, MILES W. BENNETT, AND ALLEN MUNROE.

1. In a contest between conflicting executions levied upon the same property, as to priority and the appropriation of money raised by sale of the property, where the executions issue out of different courts, that court only has jurisdiction under whose execution the money was raised, and into which the sheriff, by the command of the writ, was bound to pay it.

2. The court out of which a junior execution has issued has no jurisdiction over the proceeds of a sale made by the same sheriff of goods upon which he had made a prior levy, by virtue of an older execution out of another court.

---

The writ of error in this case removed into this court an order of the Supreme Court, made to settle the priority between execution creditors of Lewis F. R. Gregory, against whom a judgment had been obtained in the Supreme Court by the defendants in error, Chapin, Bennett, and Munroe. Upon such judgment an execution had been issued to the sheriff of the county of Sussex, who had before received two executions against the same defendant, one at the suit of Peter C. Osborne, issued out of Sussex Circuit Court, and another at the suit of Ebenezer B. Woodruff, issued out of Sussex Common Pleas, both upon judgments prior to the judgment in the Supreme Court. The order in the Supreme Court was as follows :

NEW JERSEY SUPREME COURT, January term, 1850.

Lothrop W. Chapin, Miles W. Bennett, and Allen Munroe, v. Lewis F. R. Gregory.—Upon a *fieri facias* issued and delivered to the sheriff of Sussex county, upon judgment obtained April term, 1849.

Sussex Circuit Court.—Peter C. Osborne v. Lewis F. R. Gregory. Upon a *fieri facias* upon a judgment issued in this case, and directed to the sheriff of the county of Sussex.—Judgment obtained 10th May, 1847.

Sussex Common Pleas.—Ebenezer B. Woodruff v. Lewis F. R. Gregory Upon a *fieri facias* issued upon a judgment in this case, directed to the sheriff of Sussex county.—Judgment obtained 28th October, 1848.

This court having ordered, at the July term, 1849, that the sheriff of the county of Sussex pay forthwith into the hands of the clerk of this court, at Trenton, all money or moneys made by him under and by virtue of the sale or sales made under the executions above set forth, or any other executions ; and further, that the said Peter C. Osborne and Ebenezer B. Woodruff, plaintiffs as aforesaid, show cause, on the first Tuesday of October, 1849, before this court, why the said money or moneys, so raised as aforesaid by the said sheriff, should not be paid, and applied toward the payment and satisfaction of the judgment of the said Lothrop W. Chapin, Miles W. Bennett, and Allen Munroe against the above named defendant ; and the said rule having been argued by the counsel for the respective parties at the last October term of this court, and the court having taken time until the present term to advise thereon—It is hereupon ordered, that the said rule to show cause be made absolute ; and that the said moneys, so raised as aforesaid, be paid and applied, after deducting the said sheriff's costs on all of the said executions, toward the payment and satisfaction of the said judgment of Chapin, Bennett, and Munroe against the said defendant.

On motion of I. W. Scudder, attorney for Chapin, Bennett, and Munroe.

Under the rule to show cause in the Supreme Court, affidavits had been taken by the plaintiff in error and the defendants

in error, which affidavits were brought up into this court by a rule for that purpose upon the Supreme Court, granted upon the return of the writ of error.

By this testimony, it appeared that Osborne's judgment was entered May 10, 1847, and the execution thereon was delivered to the sheriff of Sussex on the 13th of the same month; that Woodruff's judgment was entered October 28, 1848, and the execution was delivered to the sheriff on the same day; that the judgment of Chapin, Bennett, and Munroe was obtained in April term, 1849, and that execution was immediately delivered to the same sheriff.

Upon the delivery of Osborne's execution, the sheriff levied upon the personal property of the defendant, who was a farmer and ironmaster and kept a country store. The property levied upon consisted of dry goods, sugar, molasses, nails, iron, 2000 bushels of charcoal, 300 cords of wood, a yoke of oxen, farming stock and utensils. They were left with the defendant by the acquiescence and with the knowledge of Osborne. Upon the delivery of Woodruff's execution, a new levy was made under it, by an inventory, delivered to the sheriff by the defendant, including property of the same nature as that levied upon by Osborne's execution, but much of it not the same property.

This was, by virtue of a written stay, given by Woodruff's attorney, left in possession of the defendant Gregory; the sheriff being under the impression that where a written stay was given by the plaintiff, he was under no liability for the property, and had no right to remove it or to prevent the defendant from disposing of it. The defendant proceeded with his business as usual, and sold the goods in his store, used up the charcoal and wood in the manufacture of iron, and sold the iron and nails levied upon. No consent was given to this course, nor was he forbidden by the sheriff or the plaintiffs. Woodruff, the plaintiff in the judgment, lived during part of the time at New York, and part of the time at Morristown, thirty-five miles distant. There was no proof that he knew of the manner in which the property was used by Gregory, the defendant.

Upon receiving the execution of Chapin and Co. the sheriff

closed the store, and sold the goods that then remained. A large portion of the goods levied on by the two first executions were not found there at the sale; none of the dry goods, sugar, molasses, provisions, nails, iron, charcoal, or wood levied on where there for sale.

Upon these facts, the opinion of the Supreme Court was founded. The cause was argued before Justices RANDOLPH and OGDEN in that court, and their opinion, delivered by RANDOLPH, J., was as follows : *

RANDOLPH, J. Osborne's execution was received by the sheriff May 13, 1847, on which there was a levy on defendant's property, and no stay given by the plaintiff, except what may be inferred from lapse of time and the plaintiff's acquiescence, and not requiring the sheriff to proceed with the execution. Woodruff's execution was received October 27, 1848, and the sheriff levied on defendant's property, by endorsing an inventory made out by the defendant, and given to Woodruff's attorney, and by him to the sheriff. Woodruff's attorney gave to the sheriff a general stay on this execution, until he should receive further orders or until pushed by some younger execution. The house and premises where the defendant resided had been sold by Woodruff to the defendant, and taken back for non-compliance with the terms of sale, and surrendered up by defendant in September, 1849. Some of the stock, and some of the personal property also, belonged to Woodruff, who, in June, 1849, leased the whole real and personal property to the defendant. On the 27th of April, 1849, the execution of Chapin and others was received by the sheriff, and levied on all the property of the defendant; and, shortly afterwards, the whole property was sold by the sheriff, by virtue of the several executions in his hands. Defendant had a farm, a forge, and a small store with the necessary furniture, stock, and utensils, with all of which he was suffered to deal and use, and sell and exchange, as he pleased after the first two levies. Many of the goods were used up, sold, or otherwise disposed

---

* This opinion was not delivered to the reporter to be published in its proper order, and is therefore inserted here.

of, and others were purchased, so that the last levy contained some goods not in the other levies, and the second, I think, some not in the first, on which a considerable amount had been paid, the balance being a small sum due. The sheriff sold all the goods, and was about appropriating the proceeds arising from the goods contained in each levy to pay off its own execution according to priority, when the present rule was taken on him to show cause why the whole amount should not be paid on the last execution, which amounts to more than the whole proceeds of sale. On behalf of Chapin and others, it is contended that Osborne and Woodruff have forfeited their priority under the principles settled by this court, and that he is entitled to the whole proceeds. In *Cumberland Bank* v. *Hann,* 4 *Harr.* 167, this court decided, that although a stay of execution similar to that given by Woodruff to the sheriff in this case, if done in good faith, would not cause the plaintiff to lose his priority, yet " if the defendant is permitted, with the knowledge and consent of the plaintiff, *express or implied,* not only to retain the possession of the property, and to use and enjoy it for its ordinary and appropriate purposes, as in the case of household goods, but to exercise an unlimited control over all the property levied on, whatever may be its nature, to use, sell, exchange, or consume it, as the rightful and absolute owner, it is such evidence of a fraudulent and colorable use of the process of the court, whether the debt be a real and just one or not, as to postpone the execution to younger ones sued out and prosecuted in good faith;" and that " it is not necessary to prove *actual fraud* in the concoction of the judgment, nor an *actual deliberate intention or design* to defeat, hinder, or delay other creditors. A man may lose his rights, as well by negligence and a disregard to the rights of others as by positive fraud or malfeasance."

This doctrine seems also to be sustained in *Cook* v. *Wood,* 1 *Harr.* 255, and must be taken to govern this case and to enable the youngest execution creditor to postpone the prior executions, and take the proceeds arising from the sale by the sheriff. I am aware that the practice has been pretty extensive to permit executions to remain till pushed by younger execu-

tions, leaving the property in the mean time in the control and at the disposal of the defendant, and to divide the proceeds of sale as the sheriff proposed to do here; but this was under the generally received opinion that nothing but actual fraud would defeat a priority. The Supreme Court, in the cases referred to, have decided otherwise, and I do not feel warranted in going counter to their decisions. The rule must be made absolute.

The reasons assigned for reversal in error in this court were two: *first*, that the Supreme Court had no jurisdiction over the money raised by virtue of the two executions out of the county courts; *second*, that the order ought, upon the facts, to have been made to pay the money raised to the plaintiffs in the two executions first in order of time.

The cause was argued by *Whelpley* and *Zabriskie*, for plaintiffs in error, and *Scudder* and *Vroom*, for defendants in error.

*Zabriskie* and *Whelpley*, for plaintiffs, contended—

1. That the Supreme Court had no jurisdiction to control moneys raised by the process of the Circuit Court and Common Pleas, out of which the executions issued which were the first liens on the property, and by virtue of which the sale was made.

Every court can control its *own officers* in executing its *own process*, and has authority over its *own process*, but has no such authority over the officer of another court nor over the process of that court; and the fact that the same person is the officer of both courts, does not give either one of them greater power over him in executing the process of the other court than if that process were in the hands of another person: otherwise each of these three courts could have made an order upon the same sheriff, each, to pay over all the money raised to the plaintiff in its own execution, and which he must obey.

The execution which the sheriff *first receives* is the first lien on the property, and must be executed and satisfied before any other. *Rev. Stat.* 977, § 3. When, therefore, a sheriff having several executions, makes sale of goods levied on under all, the sale is under the first execution, until that is satisfied. It

is the only one under which he has authority to sell, and moneys must be considered as raised under that.   12 *John.* 162, *Sandford* v. *Roosa ;* 6 *Halst.* 346, *Mushback* v. *Ryerson.*

If this money was, in fact or in contemplation of law, raised under the executions of Osborne or Woodruff, the Supreme Court had no jurisdiction to make the order, and it must be reversed.

There is no case in New Jersey, or any other state, where a court has exercised the power of disposing of money raised on the process of any other court.   It has always been done by the court whose process was used for fraud.

2. If the Supreme Court had jurisdiction, they erred in the decision declaring the first two executions fraudulent, and postponing them to the third.

The judgments, executions, and levies were in due form, and valid upon their face.   They could only be postponed for fraud. The foundation of this power to set aside an execution and levy for fraud is in the statute of frauds.   *Rev. Stat.* 499, § 2, declaring void " all judgments and executions contrived and devised to the end, intent, and purpose to delay, hinder, and defraud creditors."   And in all cases of postponing a prior execution, it is done upon proof of its being designed to defraud creditors, either by positive evidence or inferred from the use made of the execution.

The old common law rule has been relaxed in New Jersey, and it is well settled that a levy is not void because goods are left in possession of the debtor.   1 *South.* 317, *Casher* v. *Peterson ;* 2 *South.* 480, *Cliver* v. *Applegate ;* 6 *Halst.* 218, *Lloyd* v. *Wyckoff.*

And taking an inventory has been held to be a sufficient levy without actually seizing the goods.   1 *South.* 382, *Newell* v. *Sibley ;* 6 *Halst.* 218, *Lloyd* v. *Wyckoff.*

This being the law, the mere leaving of the goods in the possession of the defendant or the manner of making the levy did not avoid it.   The only question, then, is one of fact, turning upon intent, was the object of Woodruff's judgment and levy to recover and make his own debt, or was it a cover to protect the defendant's property from the lien of other credit-

ors ? If the object and intention was *bona fide* to secure his own debt, and the delay was for leniency, and the sale and using up part of the property was through the negligence and inattention of the creditor, and not from the design to protect the defendant in the free use and consumption of his property, there is no fraud or fraudulent intent, and the execution retains its priority.

The cases in this state are all decided upon this principle of intent in the object for which the execution was issued ; and if we keep this in view, it will reconcile cases apparently discordant, in which, under facts much the same, different conclusions have been made, because the intent of the plaintiffs in the cases were different.

In *Sterling* v. *Vancleve,* 7 *Halst.* 285, the goods levied on were, by agreement of the plaintiff, left with the defendant, *for his use,* for four years, and yet it was held not to postpone execution because no fraudulent intent appeared.

In *James* v. *Burnett, Spenc.* 635, where an indefinite stay was given, and even the levy suspended, and the defendant suffered to manufacture and dispose of the goods, it was held not to avoid execution, it being clearly in good faith.

In *Matthews* v. *Warne,* 6 *Halst.* 295, in *Williamson* v. *Johnston,* 7 *Halst.* 86, and *Bank* v. *Hann,* 4 *Harr.* 172, the plaintiffs had positively permitted the defendants to use and dispose of the property levied on with their consent, showing that they did not intend the levy for the payment of their debts.

The case of *Cook* v. *Wood,* 1 *Harr.* 254, was decided on the principle, that a direction to stay proceedings on an execution is an abandonment of it, and suspends its vitality ; which was adhered to only in that case, it being expressly overruled by the same judges by their resolutions in the *Bank* v. *Hann,* and their decision in *James* v. *Burnett.*

All the cases said to be adverse to us are based upon the fact, that the plaintiff knowingly permitted such use of the property by the defendant as was inconsistent with the object of a *bona fide* levy. There is no evidence of knowledge by the plaintiff.

*Scudder* and *Vroom*, for defendants in error.

1. The jurisdiction of any court, by whose process the sheriff had made a levy upon the goods that were sold to determine the priority of executions, has never before been questioned. Where the executions issue out of several courts, that court that first makes the order touching the surplus has jurisdiction. It was so held in *Cook* v. *Wood.*

If the other executions, by the conduct of the plaintiffs, had lost their priority, then the rule was made under the execution of the Supreme Court, and that court clearly had the jurisdiction to dispose of money raised under its own process.

2. As to the merits of the case, it is clearly within the set-tled principles established by repeated decisions, both in this state and elsewhere, and recognized as law.

I. An execution delivered to a sheriff with directions not to proceed until urged by other executions, is a dormant execu-tion, and has no force against creditors. 1 *Harr.* 255, *Cook* v. *Wood;* 4 *Harr.* 171, *Bank* v. *Hann;* 6 *Halst.* 308, *Matthews* v. *Warne;* 17 *John.* 274, *Kellogg* v. *Griffin;* 15 *John.* 428, *Furrington* v. *Sinclair;* 2 *Hill* 364, *Kimball* v. *Mimenger.*

II. If the plaintiff, or the sheriff, by the plaintiff's permission or consent, express or implied, permits the defendant to use, consume, or dispose of the goods, or any part of them, and to use them as his own, such conduct is inconsistent with the ob-ject of the execution, and avoids the force of it, as against younger executions. This has been repeatedly held in New Jersey. 6 *Halst.* 295. *Matthews* v. *Warne;* 1 *Harr.* 255, *Cook* v. *Wood;* 6 *Halst.* 218, *Lloyd* v. *Wyckoff;* 7 *Halst.* 87, *Williamson* v. *Johnston;* 1 *South.* 317, *Casher* v. *Peter-son;* 4 *Harr.* 167, *Cumberland Bank* v. *Hann.*

In the case of the *Cumberland Bank* v. *Hann,* the whole matter is carefully considered, and such conduct is held, both by the resolutions and decisions, to give a younger execution priority.

It is expressly said that the permission or knowledge of the plaintiff may be implied. And where he has suspended the power of the sheriff by a stay of execution, and thus made the defendant the keeper of the goods, he is really the plaintiff's

agent, and he must be charged with knowledge of and consent to his conduct. The nature of most of the property in this case such that its only beneficial use was in its consumption, must charge him with the knowledge of its consumption, where it was left in defendant's possession *for his use* for one or two years.

GREEN, C. J. This case arises out of a controversy between execution creditors respecting the proceeds of sales of personal property, made by virtue of three several writs of execution, issued out of three different courts, directed to the sheriff of the county of Sussex. The *first* execution, in point of time, issued out of the Sussex Common Pleas, at the suit of Osborne; the second writ issued out of the Sussex Circuit at the suit of Woodruff, the plaintiff in error ; and the third writ issued out of the Supreme Court, at the suit of the defendants in error. At the instance of the defendants in error, a rule was entered in the Supreme Court, requiring the sheriff to pay into the hands of the clerk of that court " all moneys made by him by virtue of any sale or sales under the said executions or any other executions." A rule was also entered in the said court requiring the plaintiffs in the two first named executions, respectively, to show cause why the moneys so raised should not be paid and applied toward the satisfaction of the judgment of the defendants in error. The rule to show cause was subsequently made absolute, and the entire proceeds of the sale directed to be paid to the defendants in error, who hold the youngest execution.

The first question for consideration is, whether the court below had jurisdiction of the subject matter, and power to make the order in question. The power of requiring money raised upon execution to be paid into court, and of controlling its disposition when so paid in, has been long and familiarly exercised by the courts of this state. It is an exercise of power, essential alike to the security of the officer and to the efficient execution of final process. The command of every writ of *fieri facias* is, that the sheriff shall pay the money made upon the execution into the court out of which the writ issues, and

although in practice it is usual for the sheriff to pay the money directly to the plaintiff, he may at all times, for his own security, pay the money into court, and thus relieve himself from the responsibility of deciding upon the validity or priority of conflicting claims. If he pays the money levied upon execution to either of two or more conflicting claimants, he exposes himself to the vexation and expense of a suit and to the hazard of being eventually compelled to repay the money. When the fund is in court, the court have, of necessity, a right to control it. This right of control over moneys raised upon execution does not rest, as was insisted upon the argument, upon any abuse of the process of the court by the officer who executes the writ. The question touching the disposition of money raised upon execution is in fact rarely a question of abuse of process, but usually arises, as in the present instance, out of a question of priority, sometimes, though not always, involving a question of fraud.

Nor is the control over moneys raised upon execution exercised by virtue of the general superintending power of the Supreme Court over other tribunals or over its own officers. The power pertains to every court out of which process is issued, and may be exercised as well by the circuit courts or courts of common pleas as by the Supreme Court. Nor is the power limited to the case where all the contending claims are founded on executions issued out of the same court. Nor is it essential to the due exercise of the power that the court should have jurisdiction over the persons of the parties having conflicting claims by their being parties to the record in a suit pending in court.

The court has jurisdiction over the fund to be disposed of, by reason of its being in court. When there, the court not only may, but must direct its final disposition. If, as was contended on the argument, the court may declare invalid, or postpone its own process, but not the process of another court, the power of control would be nugatory. They might decide against the suitors in their own court, but not in their favor; and when, as in this case, there is process issued from several courts, and especially where process from other courts intervenes between

different writs from the same court, no one court could possibly direct the disposition of the entire fund. The parties would be compelled in such case to resort to all the courts, successively, out of which the process issued, or be driven into equity to settle the order of priority. The exercise of this power by some one tribunal is important, not only to protect the officer from the harassing vexation of conflicting claims, but to put an end to litigation and to secure the fruit of the execution. If the court may not, by its order, finally dispose of the fund, so as at once to protect the sheriff and conclude the rights of the parties, there can be no end of controversy. The termination of one suit would be but the beginning of another, without the possibility of obtaining the fruit of an execution. The practice has been so long established, and the principle upon which it rests so often recognized, that it is not to be regarded as open to a doubt.

The important question is, under what circumstances may the power to control money raised on execution be rightfully exercised? As already said, it may be exercised by any court out of which process of execution is issued. But it does by no means follow that the question, by what court the power is to be exercised, is left to be decided by a mere scramble for priority. This supposed difficulty could only have been suggested by confounding the power to control money already in court with the power to compel it to be paid into court. When the money is once in court the jurisdiction of the court attaches. The court may compel money raised upon its own process to be brought into court in order to direct its disposition, but they can exercise no such power over the process of another court. When there is a question upon which one of several executions the money is actually made, or to which of several plaintiffs in execution it is payable, that court into which the money is paid by the sheriff, either voluntarily or by consent of parties, may lawfully assume the disposition of the entire fund. The power of the court to dispose of the money results from the fact that, by the return of the sheriff, the money is in court by virtue of its own process, and that the court, alone, can properly direct its disposition.

The difficulty in the present case arises not from the fact that the court below disposed of moneys in court, but that they compelled the sheriff to bring into that court moneys raised by virtue of the process of another court. The money was not returned by the sheriff as levied by virtue of the execution out of the Supreme Court. It was not paid into that court by the sheriff voluntarily nor by consent of parties. The rule upon which the proceeding below was founded, after setting forth that the goods of the defendant were sold by the sheriff under and by virtue of three several executions, one out of the Supreme Court, another out of the Sussex Circuit, and another out of the Sussex Pleas, and making a suggestion of fraudulent abuse in regard to the last two writs, ordered the sheriff forthwith to pay into the hands of the clerk of the Supreme Court all moneys raised by virtue of sales made under the above named executions or any other execution.

Treating the money in the sheriff's hands, for the purpose of this argument, as actually paid into court, as under the circumstances we are bound to do, still it cannot be assumed that the money was so paid *voluntarily*. It must be deemed to have been paid under the compulsory order of the court. That order was erroneously entered; the court had no power to make it. It assumed jurisdiction over moneys raised by virtue of the process of other courts. It not only commanded the sheriff to pay into court all moneys raised upon the execution issued out of the Supreme Court, but also all moneys raised by virtue of executions out of the Circuit Court and Court of Common Pleas. The sheriff, by paying the money into court in obedience to that order, cannot be deemed to have made the admission, much less the return, that the whole or any part of the fund was raised by virtue of the execution issued out of the Supreme Court.

And by the lists of articles sold by virtue of the several writs, which are exhibits in the cause, it appears that the property was not all levied upon, and the moneys made upon the same executions; but, on the contrary, that certain goods were levied on and sold, and a certain amount of money made, by virtue of each execution, in a specified order of priority.

Woodruff v. Chapin et al.

That under the Osborne execution, there was raised by sale $61.18; under the Woodruff execution, $378.27; and under the execution of Chapin and others (the defendants in error) there was made only $25.65. So that it appears affirmatively from the evidence that the money paid into the Supreme Court, in obedience to the compulsory order of the court, was principally made not upon an execution issued out of that court, but upon prior executions issued out of other courts. The order was improvidently entered. It exceeded the authority of the court.

Upon this ground, as well the rule directing the sheriff to pay into the Supreme Court the moneys raised upon the prior executions issued out of other courts, as also the final order of the court thereon, is erroneous, and must be vacated and set aside.

Judgment below reversed unanimously.